## S. HANNAH AND FRED. NODINE, APPELLANTS, v. J. Q. SHIRLEY, RESPONDENT.

PAROL PROOF—WRITTEN CONTRACT.—Where it is apparent upon the face of a written contract that something was contemplated and ageeed upon by the parties, which they have not distinctly defined, or expressed with sufficient clearness, parol proof connecting the instrument with its subject-matter is admissible to show what the parties intended.

APPEAL from Union County. The facts are stated in the opinion.

*Knight & Lord and Sterns & Balleray,* for appellants:

Parol evidence may be admitted to establish an independent fact, or to prove a collateral agreement incidentally connected with the stipulation of a deed or other written contract. (15 Mass. 85.) Such evidence is admissible to show an agreement subsequent to a written agreement and engrafting on it new provisions. (13 Pick. 446; 9 Id. 298.)

It is competent to prove by parol a distinct subsequent agreement waiving, abandoning or modifying the terms of the writing, or to prove an additional suppletory agreement by which something is supplied that is not in the written contract. (37 Md. 410; 44 Md. 396; 1 Greenl. Ev., sec. 304.)

In the contract between appellants and respondents, Shirley "is to pay the interest on the twenty dollars spoken of in the plaintiff's contract, etc., and the plaintiffs Nodine and Hannah "are to give satisfactory security to the First National Bank at Portland for the twenty dollars spoken of in the said Iliff contract." It is plain that something was

here intended by the parties, which they have not expressed with sufficient clearness, and in such case, "parol evidence is admissible, or any extrinsic circumstances tending to show what person or persons, or what things were intended by the party, or to ascertain his meaning in any other respect." (1 Greenl. Ev., sec. 288, and notes.)

Its effect would not be to vary or contradict the contract, or add any new terms or conditions, but would simply explain more fully and definitely an intent apparent on the face of the contract, viz., to identify the subject-matter upon which Shirley "is to pay the interest," and Nodine and Hannah "to give satisfactory security at the First National Bank at Portland." "Where it is apparent on the face of the instrument that something is contemplated and agreed upon by the parties which they have not distinctly defined, or expressed with sufficient clearness, parol proof connecting the instrument with its subject-matter is always allowable to show what the parties intended and meant." (2 Hilton, 197.)

The same rule prevails in Maryland, where it is thus ably and clearly stated by the court: "It is equally a certain and indisputable rule that such evidence (parol) is admissible to ascertain and make certain the parties and subject-matter of an agreement; to apply the contract to its subject; to prove any collateral, independent fact about which the written agreement is silent; to remove what are termed (and often inaccurately) latent ambiguities, and as this court said in 5 G. & J., 157, etc., though an ambiguity apparent on the face of a written instrument can not be explained by extrinsic evidence, yet when a question arises as to the general intention of the parties, concerning which the instrument is not decisive, it has been held that proof of independent facts collateral to the instrument, may be properly admitted." In Massachusetts, the rule is much more liberal, and carried to an extent beyond what is claimed in the present case. In that state, parol evidence is admitted to prove a subsequent oral agreement enlarging the time of performance of a simple contract, or varying its terms, or to show a waiver or discharge, although the original con-

tract was required by the statute of frauds to be in writing. (9 Cush. 31; 3 Met. 486; 37 Ark. 510; 36 Md. 154.)

The decisions in Maine have a bearing in the same direction. (25 Me. 450; 15 Id. 61.) In Pennsylvania the rule is still more liberally construed. (67 Penn. 462; 35 Id. 215; 31 Id. 252, 270.) In New Hampshire it has been held that parties to a written contract, after it has been made, may fix by a further agreement a place for carrying it into effect and appoint an agent to receive the money payable on such contract, and such agreement may be shown by parol evidence and is binding upon them. (19 N. H. 569.) And that evidence tending to prove a change in the terms of a contract was agreed to by the parties after the same was reduced to writing and not before, is competent. (7 Foster, 360.)

In a memorandum of sale in which many articles were enumerated, and which concluded with the words "meaning all the farming tools, etc., now owned by him on said farm," it was held that parol evidence was admissible for the purpose of ascertaining to what specific property these words applied. The court said "a doubt or ambiguity exists then as to the meaning or application of these words, or rather an uncertainty as to the articles intended to be conveyed. Whenever this is the case parol evidence of extrinsic circumstances and facts is admissible, for the purpose of ascertaining to what specific property the words used apply or were intended to apply. As expressed in one of the cases in which this subject is discussed the evidence is admissible as explaining the object on which the parties intended the contract should operate and be rendered effectual." (40 Vt. 144.)

Applying the principle thus stated, the inquiry naturally suggests itself what was meant and intended by the words "Shirley is to pay the interest on the twenty thousand dollars spoken of in said Iliff contract, etc.," and the said Nodine and Hannah "are to give satisfactory security at the First National Bank at Portland for the twenty thousand dollars spoken of in the said Iliff contract."

It is apparent on the face of the agreement that some-

thing was contemplated and agreed upon by the parties which they had not defined with sufficient clearness and precision, and that a doubt or ambiguity exists as to the meaning and application of these words and as to what they were intended to apply. In such case parol evidence of extrinsic facts and circumstances is admissible for the purpose of ascertaining the intention of the parties and the meaning and application of the words employed, or "to explain the object on which the parties intended the contract should operate and be effectual." It would not add anything to the contract or alter or vary its terms, but would simply aid in interpreting it and define more fully and explicitly the intention of the parties to the contract. It would do no more than make certain what might be considered vague on the face of the instrument and make the contract conform to the intention and objects for which it was made. It is competent to prove an additional suppletory agreement by parol, by which something is supplied that is not in the written contract. (1 Greenl. Ev., sec. 304.)

If the fact be that after the making of this contract the parties discovered that some of its provisions were vague and indefinite, or that something was omitted, it was their clear legal right to make an additional suppletory agreement to supply that omission and render their contract operative and effectual. By the Maryland court of appeals the rule is broadly stated that "it is competent to prove by parol a distinct subsequent agreement waiving, abandoning or modifying the terms of the writing, or to prove an additional suppletory agreement by which something is supplied that is not in the written contract." (37 Md. 410; 44 Id. 396.)

Under the rule thus announced the testimony excluded ought to have been admitted. It was only proposed to show that Shirley, subsequently to the making of the written contract, had agreed to place twenty thousand dollars in the First National Bank at Portland to the credit of appellants on the twentieth day of March, 1876, for which the appellants were to give satisfactory security, etc.

This was simply engrafting a suppletory agreement on the

contract to supply an omission, or, as the court states, is something that is not in the written agreement. In effect it only defines more clearly the intention of the parties and the purport and purpose of the words employed in the written contract. It violates no rule of evidence nor imports any new terms or conditions by which any alteration is made in the contract. It could have been proven as well without such suppletory agreement as with it. It was resorted to, no doubt, to make more certain what was thought to be vague and indefinite, or to supply what the parties omitted to include in their written agreement, so that its provisions should be free from doubt.

It is submitted that without the aid of such suppletory agreement, or parol evidence of extrinsic facts to explain or interpret what was meant and intended by the words used in certain provisions already referred to, that the contract is inoperative, and these provisions meaningless and absurd. This doctrine is not of late origin, or any infringement of the rule as to the admissibility of parol evidence. The courts of Massachusetts have long held, that parol evidence is admissible to show an agreement subsequent to a written agreement and engrafting on it new provisions. This is carrying the rule to an extent that is not necessary to the present purpose, nor claimed in the case at bar.

The testimony of Hannah which was excluded by the court below, was intended to show the purpose or object for which " satisfactory security " was to be given at the First National Bank at Portland. The agreement subsequently made has no further or greater effect. It would not have varied or contradicted the contract, but merely supplied an omission, without which in case of a misunderstanding of the parties, it would have been ambiguous, or difficult of explanation without the aid of extraneous facts to render more definite the meaning for which that security was to be given. In the note to 1 Johns. Cas. 22, numerous authorities are cited, illustrative of the principle and qualifications of the rule of the admissibility of parol testimony in respect to written agreements.

*Dolph, Bronaugh, Dolph & Simon,* for respondent:

If the contract testified to by Hannah was oral and provided that respondent should deposit the twenty thousand dollars on the twentieth of March, 1878, then it was a contract not to be performed within a year, and was void under our statute, and the court did right in refusing to allow evidence of such an agreement to go to the jury. (Civ. Code, sec. 775, p. 264.)

If the alleged oral contract was entered into on March 6th, 1876, and by its terms defendant was to deposit twenty thousand dollars in the bank on March 20, 1876, then we submit that if this testimony was offered to subjoin this as one of the terms, and as a part of the written contract of that date, the evidence was inadmissible as tending to vary the writing, and also for the reason that an agreement can not be partly in writing and partly in parol. (*Lane* v. *Sharp,* 3 Scam. 567; *Scott* v. *Bennett,* 3 Gilm. 243; *Winneshiek Ins. Co.* v. *Holzgrafe,* 53 Ill. 516;. *Wolfe* v. *Myers,* 3 Sandf. 7; *Erwin* v. *Saunders,* 1 Cow. 249; *Thompson* v. *Ketcham,* 8 John. 189; *Patterson* v. *Hall,* 9 Cow. 747; *Woodall* v. *Greater,* 51 Ind. 539; 29 Ark. 544; *Johnson* v. *Openheim,* 55 N. Y. 292, 293; Civ. Code, 248, sec. 682; 1 Greenl. Ev., sec. 275.)

But if the design was to prove a subsequent and distinct contract orally agreed upon between the parties, then no consideration was alleged or offered to be proved for such contract; beside that, the subsequent contract would have to be shown to be complete within itself, without reference to the written agreement, or else the rule last above invoked would be infringed. It is evident, however, from what appears, that the design was to add to this written contract a provision not contained in it, and not to prove a subsequent and substituted agreement complete within itself. Such claimed subsequent parol contract must be complete within itself and upon a distinct consideration. (1 Greenl. Ev., sec. 303: *Merkle* v. *Wehrhum,* 32 Ill. 534; *Pratt* v. *Marrow,* 45 Mo. 404; *Brigham* v. *Rogers,* 17 Mass. 573; *Bunce* v. *Beck,* 43 Mo. 266, 281; *Field* v. *Mann,* 42 Vt. 61; *Hume* v. *Taylor,* 63 Ill. 45, 46.)

There is no further consideration than that expressed in the principal contract to sustain a suppletory agreement, and this for the reason that the two parts constitute but one entire contract, while a supplemental agreement, though it may have reference to the subject-matter of the original contract, is yet a separate and distinct agreement, and therefore requires an independent consideration for its support. "Suppletory" is defined by Webster as meaning "supplying deficiencies," and involves the idea of filling up an evident vacuity in a something precedent, while "supplemental" means "additional," and implies the subjoining of something further than is contemplated in the primary writing. A suppletory agreement is accordingly spoken of in the authorities as one by the stipulations whereof omissions apparent upon the face of a written contract, incomplete within itself, are supplied. In order, therefore, to allow parol proof of such verbal agreement as being suppletory, the writing must be to a greater or less degree a skeleton, for, as said by Lord Ellenborough in one of the earliest cases on this subject, "the writing is conclusive as far as it goes." And the writing in that case was an excellent illustration of such a contract—"six weeks at two guineas—Wm. Walton, junr." (2 Par. on Con. 553, note *h.*) Here Lord Ellenborough treated the contract as incomplete on its face, and therefore allowed proof that the defendant, at the time of the hiring, agreed to be responsible for all accidents, but said, "I shall not allow any evidence to be given by the plaintiff in contradiction of the terms of the writing, which is conclusive as far as it goes." (3 Cowen & Hill's Notes to Phil. on Ev. 1472.)

Another fair illustration of the principle is found in the case of *Knapp* v. *Harden* (6 Car. & Payne, 745), which was this: "A. sent to B.'s agent a list of prices at which he would do work. B. wrote a letter to his agent, stating that he would agree to the prices if A. would consent to be paid at stated periods, the first payment to be 'in November.' The agent showed this letter to A. and said to him that he might consider the one hundred pounds to be payable on the 'first of November.' A. afterwards did the work for B.

It was left to the jury to say whether that which the agent said to A. formed a part of the actual contract between the parties, or whether it was a mere observation by the agent himself."

Here the expression " in November " was indefinite and the writing incomplete in that respect, and evidence by parol that by verbal agreement the time in the month when the payment should be made was subsequently fixed did not tend to vary, alter or contradict the writing. So in *Goodrich* v. *McClary* (3 Neb. 128), the contract in writing was as follows: " Agreement made this eighth day of April, 1872, between Orson Goodrich and J. S. McClary. That Orson Goodrich delivers his cutting of wool to J. S. McClary by June 5, 1872, at Norfolk, Nebraska, at thirty-eight and a half cents per pound, the understanding that on delivery of wool at Norfolk to advance. one hundred dollars and the balance as soon as gets return from said wool."

This the court denominated " a very brief and crude memorandum of the contract," and held parol evidence admissible to show " the number and kind of sheep which Goodrich owned at the date of this contract," saying: " It does not change the contract but supplies an omission, without which, in case of disagreement of the parties, it would be ambiguous and wholly inexplicable." These instances, we think, sufficiently illustrate the rule as to the admissibility of parol testimony to supply terms agreed upon subsequently and verbally to fill up the gaps or omissions apparent upon the face of a written contract. (See also *Deshon* v. *Merch. Ins. Co.* 11 Met. 199; *Rollins* v. *Claybrook*, 22 Mo. 405; *Mott* v. *Richtmyer*, 57 N. Y. 58, 59.)

According to our understanding of the written contract of March 6, 1876, between these parties in the case at bar, that agreement is complete within itself, and the testimony offered by Hannah was not to supply an omission apparent in the writing, but was an attempt to " import into it " a stipulation directly at variance with its terms and intended to materially change and affect the rights of the parties under it. As the writing reads, Nodine and Hannah under-

took "to give satisfactory security to the First National Bank of Portland, Oregon, for the twenty thousand dollars spoken of in said Iliff contract." In the contract between Iliff and Shirley of February 11, 1876, Iliff agreed to deposit in the First National Bank of Boise City, Idaho, on or before March 20, 1876, the sum of twenty thousand dollars to Shirley's credit, "to be paid him on the delivery of said cattle mentioned in these articles of agreement," and again it is said in this writing that Iliff agrees to pay to Shirley "the several sums of money each per head, according to the value herein above mentioned upon the delivery of the said cattle, as herein above stated." Plainly, therefore, Shirley could draw out nothing of the twenty thousand dollars except as he delivered cattle on Iliff's ranch in Colorado equal in value to the amount drawn for.

We therefore understand from the contract of March 6, 1876, that Nodine and Hannah undertook to guaranty to Shirley the performance by Iliff of his contract as to the deposit of the twenty thousand dollars in the Idaho bank, by giving satisfactory security to the Portland bank "for the twenty thousand dollars spoken of in said Iliff contract," and that this guaranty and the services they were to render in purchasing cattle was the consideration upon which Shirley agreed to assign to them, Nodine and Hannah, a half interest in the Iliff contract and to furnish the two four-mule teams and wagons and the twenty saddle horses, property presumptively worth five or six thousand dollars, beside which Shirley agrees to pay the interest on the twenty thousand dollars individually. But if Hannah's testimony is to be received, then so far from Nodine and Hannah guaranteeing to Shirley the deposit of the twenty thousand dollars mentioned in the Iliff contract Shirley agreed to deposit that amount in the Portland bank on March 20, the same day on which Iliff was to make the deposit in the Idaho bank, and thereby Shirley was to guaranty to Nodine & Hannah the deposit by Iliff, which precisely reverses and contradicts the writing as to the matter of said guaranty, and moreover imposes on Shirley what would seem to be a hard and very unequal bargain.

And now we ask is it safe for this court to trench upon the well-established rule of law as to the admissibility of parol testimony to vary and contradict a writing, by allowing such proof as was offered by Hannah, under the claim of establishing suppletory terms of the written agreement? Moreover, is it at all probable that when the precise provision of the Iliff contract requiring the deposit in bank of the twenty thousand dollars was in the mind of the parties to the Nodine, Hannah and Shirley agreement, while it was being drafted and signed, that if so important an item as claimed in Hannah's testimony was intended as a part of this latter contract it would have been omitted? or if so, and the omission being discovered immediately after and on the same day, that the writing would have been left intact and unaltered? But if the matter sworn to by Hannah was not intended as part of the original contract, then it is not suppletory of that contract, but was an independent and supplemental agreement and required a new and additional consideration for its support.

We think that the provision in the Iliff contract that Shirley should pay Iliff at the rate of one per cent. per month for money on said contract over and above twenty-five per cent. of the contract price for the cattle, was intended to mean that while the twenty thousand dollars remained on deposit in the bank of Idaho to Shirley's credit each party should lose or pay the interest about equally between them. The whole of the cattle would cost forty-four thousand three hundred and twenty-five dollars, and Shirley was to have eleven thousand and eighty-one dollars, free of interest, and Iliff was to lose the interest on eight thousand nine hundred and nineteen dollars of the twenty thousand dollars. For as the money was only to be paid to Shirley "on delivery of the cattle," we can not see how interest on any portion of the entire purchase-price except the twenty thousand dollars to be deposited in the bank of Idaho could have been contemplated by the parties when framing said interest clause in the Iliff contract.

Be that as it may, the agreement between Iliff and Shirley is not now before this court for construction further than it

may affect the question as to whether there is in the Nodine, Hannah and Shirley contract, an evident omission, which might be supplied by parol proof of a stipulation similar to that set up in Hannah's evidence, and this we submit does not appear.

By the Court, KELLY, C. J.:

On the eleventh day of February, 1876, J. Q. Shirley and J. W. Iliff entered into a written contract, which is as follows:

"These articles of agreement, made and entered this eleventh day of February, A. D. 1876, by and between J. Q. Shirley, of Kelton, Utah, of the first part, and John W. Iliff, of Denver, Colorado, of the second part, witnesseth: The party of the first part, for and in consideration of the sum of one dollar, to him in hand paid, and the promises and agreements hereinafter mentioned to be performed by him, do hereby promise to deliver to the party of the second part or his agent, at his ranch on Cow Creek, Wild county, Colorado, the following number of cattle, known as Oregon-American steers, to wit: Four hundred and twenty-five four-year-old steers, of the value of twenty-five dollars per head; seven hundred and twenty-five three-year-old steers, of the value of twenty dollars per head; seven hundred and twenty-five two-year-old steers, of the value of seventeen dollars per head; and six hundred and twenty-five one-year-old steers, of the value of eleven dollars per head, the above number being two thousand five hundred head in all. In consideration whereof the party of the second part promises to pay to the party of the first part the several sums of money each per head, according to the value herein above mentioned, upon the delivery of the said cattle, as herein above stated. The above number of cattle are to be delivered on or before the tenth day of September, A. D. 1876, to the said Iliff or his agent, at the time and place above stated. The party of the second part hereby agrees to place on deposit, on or before the twentieth day of March, A. D. 1876, in the First National Bank of Boise City, Idaho, or some other bank in good

commercial standing that may be designated by the said Shirley, to the credit of J. Q. Shirley, party of the first part, the sum of twenty thousand dollars, to be paid to him on the delivery of said cattle mentioned in these articles of agreement; this sum to be deducted from the gross sum to be paid on the delivery of said cattle. It is further understood that the said Iliff may reject any poor, lame or injured cattle offered in delivery under this contract; and it is also understood that the party of the second part will receive and pay, in like manner, for any additional number of cattle, not exceeding five hundred head, that may be offered by the party of the first part, provided, the said Shirley notifies the said Iliff on or before May 1, 1876; and the said party of the first part agrees to pay the said party of the second part the rate of one per cent. per month for money on this contract over and above twenty-five per centum of the contract price for said cattle. In consideration above the parties have set their hands this fourteenth day of February, A. D. 1876.       "J. Q. SHIRLEY,

                                    "J. W. ILIFF."

On the sixth of March, 1876, Shirley, who is the respondent, made the following assignment of one half of his interest in the contract to the appellants: "I do hereby, on the sixth day of March, 1876, sign over to F. Nodine and S. Hannah, both of Union, Oregon, one half my interest in the within contract."

On the same day Shirley entered into the following contract with Nodine and Hannah: "An agreement entered into this, the sixth day of March, 1876, between J. Q. Shirley, of Kelton, Utah, and S. Hannah and F. Nodine, both of Union, Oregon: J. Q. Shirley hereby agrees to sign over to Hannah and Nodine one half of his interest of his contract with J. W. Iliff for the following consideration: Hannah and Nodine to buy three thousand steers, according to the agreement in the Iliff contract, and one thousand head of those kind of cattle that can be bought at the best advantage, J. Q. Shirley to pay the interest on the twenty thousand dollars spoken of in the Iliff contract individually. He also agrees to furnish, at Look-

out Mountain, two four-mule teams, two wagons and twenty saddle horses; these to be credited to him on the company books of Nodine, Shirley & Co. This property, then, to become company property; Nodine and Hannah to give satisfactory security to the First National Bank of Portland, Oregon, for the twenty thousand dollars spoken of in the said Iliff contract. All expenses of buying and driving said cattle to be charged on the company books. All horses, if their value can not be determined on by all the parties to this contract, all to be appraised and put on the company books at their appraised value. F. Nodine, of this contract, J. Q. Shirley, of this contract, S. Hannah, of this contract, all agree to form a copartnership under the name of Nodine, Shirley & Co., for the fulfillment of this and the Iliff contract, J. Q. Shirley to have one half interest and also to bear one half of the expenses, the other parties to represent the other half.                          "J. Q. SHIRLEY,
                                    " FREDERICK NODINE,
                                    " S. HANNAH.
"Witnesses: G. B. Grow, J. B. Eaton, Jr."

The appellants brought this action for a breach of the foregoing contract, and alleged in their complaint that in addition to the contracts above set forth, and in fulfillment thereof the respondent agreed with them to place on deposit in the First National Bank of Portland, Oregon, on or before the twentieth day of March, 1876, the twenty thousand dollars referred to in the Iliff contract and the contract of March 6, 1876; that respondent failed and refused to deposit that or any other sum of money in the said First National Bank of Portland on the twentieth day of March, 1876, or at any other time, and that in consequence of such failure and refusal they were unable to deliver cattle which they had purchased, to fulfill the contract on their part, and that they sustained damage by such failure.

The respondent in his answer to the complaint denies all the allegations in it except as to the deposit of twenty thousand dollars in the First National Bank of Portland. He admits that he did not deposit that sum in the bank on the

twentieth day of March, 1876, but avers that the sum was deposited in said bank on the twenty-first day of March, 1876.

The case being on trial, S. Hannah, one of the appellants, was called as a witness, and testified as follows: "That defendant agreed to place twenty thousand dollars in the First National Bank of Portland, to the credit of plaintiffs, on the twentieth day of March, 1876, upon plaintiffs furnishing security at said bank for said twenty thousand dollars, in pursuance of a contract entered into between the parties hereto, dated March 6, 1876. · That plaintiffs and defendant were to deliver three thousand head of cattle, in quality to correspond with the terms of the Iliff contract, mentioned in the complaint; that he went to the bank on that day with Mr. Shirley to get the money."

Counsel for the defense inquired of the witness if the contract, about which he was testifying, was in writing, and on receiving a negative reply moved the court to strike out all the evidence heretofore stated by said witness. The court sustained said motion and withdrew said testimony from the consideration of the jury.

To this ruling of the court exception was taken, and it now comes here as an assignment of error.

It is now urged by the respondent's counsel in support of this ruling of the court, that oral evidence was inadmissible to show that the written contract was varied by a parol agreement made at the same time; and also that a subsequent parol agreement to change the terms of the written contract must be founded upon a good and sufficient consideration. These are undoubtedly correct principles of law, and the only question is whether they are applicable to this case. While it is true that parol evidence can not be admitted to change the terms of a written contract, it may, nevertheless, be received to explain some ambiguity in it consistently with the written instrument. Thus where it is apparent upon the face of the contract that something is contemplated and agreed upon by the parties which they have not distinctly defined, or expressed with sufficient clearness, parol proof connecting the instrument with its

subject-matter is always allowable to show what the parties intended and meant.

In regard to the contract between Shirley and Iliff, the respondent claims that the twenty thousand dollars to be deposited in the First National Bank of Boise City or other good bank was merely a deposit of that sum to secure a faithful performance of the contract by Iliff, and that it was not to belong to Shirley until he should deliver the cattle.

We think that is not the correct construction of this agreement. It is true it says that Iliff is to deposit " the sum of twenty thousand dollars, to be paid to him (Shirley) on the delivery of said cattle mentioned in these articles of agreement." But the next sentence is as follows: " This sum to be deducted from the gross sum to be paid on the delivery of said cattle," clearly implying that the balance of the purchase price was to be paid on delivery, and the twenty thousand dollars was to be accounted for as having been paid at that time by deducting it from the final payment of the balance due. This view is strengthened by a further provision, which required Shirley to pay interest on this sum, less one fourth of the contract price of the cattle. The contract price being forty-four thousand three hundred and twenty-five dollars, Shirley agreed to pay interest on all the twenty thousand dollars, less eleven thousand and eighty-one dollars, that being twenty-five per centum of the contract price for the cattle. Why would he pay interest on that sum of money unless it belonged to him or he could use it? In short, we regard the contract of Shirley and Iliff to be substantially this: Shirley agreed to purchase and deliver to Iliff, in Colorado, on or before September 10, 1876, two thousand five hundred head of cattle, of the aggregate value of forty-four thousand three hundred and twenty-five dollars, in consideration of which Iliff agreed to deposit twenty thousand dollars in the First National Bank of Boise City " or some other bank in good commercial standing that may be designated by the said Shirley, to the credit of J. Q. Shirley." He (Shirley) was to use it in the purchase of the cattle and pay interest on the twenty thousand dollars placed to his credit, less eleven

9

thousand and eighty-one dollars, that being twenty-five per cent. of the contract price of the cattle. Half of this contract was assigned on the sixth of March, 1876, by the respondent Shirley, to the appellants, Nodine and Hannah. They were to buy the cattle and give security to the First National Bank of Portland, Oregon, for the twenty thousand dollars which Iliff was to advance, which sum was to be used by them in paying for the cattle they should buy. Respondent was to pay the interest on the twenty thousand dollars, less eleven thousand and eighty-one dollars, and with him rested the right to designate in what bank the twenty thousand dollars to be advanced by Iliff should be deposited on or before the twentieth day of March, 1876. He had a right to direct Iliff to deposit the money in the First National Bank of Boise City or the First National Bank of Portland. Which did he select? In what bank did he agree with appellants that the twenty thousand dollars should be placed to their credit? This could only be ascertained by evidence outside of the written contract, and this the testimony of S. Hannah tended to show. We think that evidence was proper to go to the jury, not to contradict or vary the terms of the written instrument, but to show what place was agreed upon for the performance of an act which the written contract itself left open for future designation. Parol evidence was admissible for this purpose, and the testimony of Hannah should not have been withdrawn from the consideration of the jury. (1 Greenl. Ev., secs. 282, 304.)

The judgment is reversed and a new trial ordered.